UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | EDCR 17-222(A)-JGB |
| Plaintiff, | F I R S T |
| | S U P E R S E D I N G |
| v. | I N D I C T M E N T |
| SLAVCO IGNJATOV, VALENTINO HRISTOVSKI, DJORDJE KARAC, and FNU LNU, aka "Boss," aka "bman," aka "Superman," aka "Super7," aka "Xxxghost," | [21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine] |
| Defendants. | |

The Grand Jury charges:

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about October 23, 2017, in Los Angeles County, Riverside County, and San Bernardino County, within the Central District of California, and elsewhere, defendants SLAVCO IGNJATOV ("IGNJATOV"), VALENTINO HRISTOVSKI ("HRISTOVSKI"), DJORDJE KARAC ("KARAC"), and FNU LNU, also

known as ("aka") "Boss," aka "bman," aka "Superman," aka "Super7,"
aka "Xxxghost" ("BOSS"), two un-indicted co-conspirators ("Co-
Conspirator One" and "Co-Conspirator Two"), and others known and
unknown to the Grand Jury, conspired and agreed with each other to
knowingly and intentionally distribute and possess with intent to
distribute at least five kilograms of a mixture and substance
containing a detectable amount of cocaine, a Schedule II narcotic
drug controlled substance, in violation of Title 21, United States
Code, Sections 841(a)(1) and (b)(1)(A)(ii)(II).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED

     The objects of the conspiracy were to be accomplished, in
substance, as follows:

     1.   Defendant BOSS would coordinate the transportation of
cocaine from the Central District of California to other states and
to Canada for further distribution.

     2.   Defendant IGNJATOV, who owned a trucking company called Bo-
mak Express Inc. ("BO-MAK"), would provide drivers for the
transportation of cocaine from the Central District of California to
other states and to Canada for further distribution.

     3.   Co-Conspirator One and other un-indicted co-conspirators
would arrange for the delivery of cocaine to drivers provided by
defendant IGNJATOV, including defendant KARAC.

     4.   Defendant KARAC, using a BO-MAK truck, would pick up
cocaine from Co-Conspirator One and other un-unindicted co-
conspirators, and then transport the cocaine to other states and to
Canada for further distribution.

1        5.    Co-Conspirator Two, acting at the direction of defendant

2  BOSS, would deliver money to Co-Conspirator One as payment for Co-

3  Conspirator One's participation in the distribution of cocaine.

4        6.    Defendants IGNJATOV and HRISTOVSKI, using a BO-MAK truck,

5  would conduct "dry runs" (i.e., transport legal substances instead of

6  cocaine) on the routes used by their co-conspirators to transport

7  cocaine to determine whether law enforcement knew of the means and

8  methods used by the conspiracy to transport cocaine.

9        7.    Defendants HRISTOVSKI, KARAC, and BOSS, and Co-Conspirator

10  One would possess encrypted Blackberry devices for the purpose of

11  securely communicating with other co-conspirators.

12  C.    OVERT ACTS

13        In furtherance of the conspiracy and to accomplish its objects,

14  on or about the following dates, defendants IGNJATOV, HRISTOVSKI,

15  KARAC, and BOSS, Co-Conspirator One, Co-Conspirator Two, and others

16  known and unknown to the Grand Jury, committed various overt acts in

17  Los Angeles County, Riverside County, and San Bernardino County,

18  within the Central District of California, and elsewhere, including,

19  but not limited to, the following:

20        1.    On March 11, 2017, in Port Huron, Michigan, defendant KARAC

21  entered the United States from Canada, driving a BO-MAK truck (the

22  "First BO-MAK Truck"), to pick up cocaine from Co-Conspirator One.

23        2.    On March 16, 2017, in Mira Loma, California, Co-Conspirator

24  One met with defendant KARAC, who was driving the First BO-MAK Truck,

25  and gave defendant KARAC ten duffle bags, containing approximately

26  193.7 kilograms of a mixture and substance containing cocaine, which

27  defendant KARAC loaded into the First BO-MAK Truck.

28

3.   On March 16, 2017, in Chino, California, defendant KARAC possessed approximately 193.7 kilograms of a mixture and substance containing cocaine and an encrypted Blackberry device in the First BO-MAK Truck, both of which were seized by law enforcement (the "March 16 seizure").

4.   On March 19, 2017, using coded language during a recorded telephone conversation, defendant KARAC advised defendant IGNJATOV that a drug-detection police dog alerted to the First BO-MAK Truck at the time of the March 16 seizure, to which defendant IGNJATOV replied that defendant KARAC likely had been set up.

5.   On March 22, 2017, using coded language during a recorded telephone conversation, defendant IGNJATOV told defendant KARAC that defendant IGNJATOV found approximately $1,450 in defendant KARAC's jacket, which had been left behind in the First BO-MAK Truck, and stated that, when law enforcement entered the truck, they knew what they were looking for.

6.   On March 22, 2017, using coded language during a recorded telephone conversation, defendant IGNJATOV informed defendant KARAC that defendant KARAC likely would receive a beating for being in possession of the cocaine at the time of the March 16 seizure.

7.   On March 19, 2017, using coded language during an in-person conversation, Co-Conspirator One told an individual he believed to be a co-conspirator, but who was, in fact, a confidential source working at the direction of the Federal Bureau of Investigation ("FBI"), that they (Co-Conspirator One and others) needed to do a "dry run" using flour or a similar substance.

8.   On March 21, 2017, in Ontario, California, defendant IGNJATOV picked up the First BO-MAK Truck from a towing company that

4

1   stored the truck after it had been impounded by the Fontana Police
2   Department following the March 16 seizure.

3        9.    On April 21, 2017, using coded language in a series of
4   encrypted Blackberry messages, defendant BOSS and Co-Conspirator One
5   discussed the need to conduct several "dry runs" before resuming the
6   transportation of cocaine to determine whether law enforcement was
7   aware of the methods, means, and persons used by the conspiracy to
8   transport cocaine.

9        10.   On April 25, 2017, using coded language in an encrypted
10  Blackberry message, Co-Conspirator One informed defendant BOSS that
11  he (Co-Conspirator One) had conducted a successful dry run without
12  being intercepted by law enforcement, but that he (Co-Conspirator
13  One) wanted to conduct additional dry runs to ensure the
14  transportation routes were safe before resuming the transportation of
15  cocaine.

16       11.   On May 6, 2017, using coded language in an encrypted
17  Blackberry message, Co-Conspirator One informed defendant BOSS that
18  he (Co-Conspirator One) had completed another successful dry run.

19       12.   On May 15, 2017, using coded language in an encrypted
20  Blackberry message, defendant BOSS told Co-Conspirator One, who
21  unbeknownst to defendant BOSS was now cooperating with law
22  enforcement, that, before resuming the transportation of cocaine, he
23  (defendant BOSS) wanted to see whether federal prosecutors would
24  charge defendant KARAC for transporting approximately 193.7 kilograms
25  of cocaine on March 16, 2017.

26       13.   On May 20, 2017, using coded language in an encrypted
27  Blackberry message, defendant BOSS told Co-Conspirator One, who
28  unbeknownst to defendant BOSS was now cooperating with law

1   enforcement, that defendant IGNJATOV wanted to resume cocaine

2   shipments in the near future, but that he (defendant BOSS) still was

3   waiting to see whether defendant KARAC would be charged federally for

4   the March 16 seizure.

5       14.  On May 28, 2017, using coded language in an encrypted

6   Blackberry message, defendant BOSS told Co-Conspirator One, who

7   unbeknownst to defendant BOSS was now cooperating with law

8   enforcement, that it did not appear that federal charges would be

9   filed against defendant KARAC and he (defendant BOSS) planned to

10  resume cocaine shipments in the near future.

11      15.  On June 11, 2017, in Los Angeles, California, Co-

12  Conspirator Two met with an individual he believed to be Co-

13  Conspirator One, but who was, in fact, an undercover law enforcement

14  officer (the "UC"), and gave the UC approximately $20,000 on behalf

15  of defendant BOSS as payment for Co-Conspirator One's participation

16  in the delivery of cocaine to defendant KARAC on March 16, 2017.

17      16.  On October 20, 2017, in Port Huron, Michigan, defendants

18  IGNJATOV and HRISTOVSKI entered the United States from Canada,

19  driving a BO-MAK truck (the "Second BO-MAK Truck"), to conduct a dry

20  run on the route that defendant KARAC previously used to transport

21  cocaine.

22      17.  On October 23, 2017, in Mira Loma, California, while

23  conducting a dry run on the route that defendant KARAC previously

24  used to transport cocaine, defendants IGNJATOV and HRISTOVSKI met

25  with an unidentified co-conspirator, who gave defendants IGNJATOV and

26  HRISTOVSKI a duffle bag containing approximately 60 pounds of sugar,

27  which defendants IGNJATOV and HRISTOVSKI loaded into the Second BO-

28  MAK Truck.

18.  On October 23, 2017, in Fontana, California, while continuing to execute the dry run, defendants IGNJATOV and HRISTOVSKI drove to the same restaurant parking lot where defendant KARAC previously had stopped while transporting cocaine.

19.  On October 23, 2017, in Fontana, California, defendant HRISTOVSKI possessed an encrypted Blackberry device in his pocket.

A TRUE BILL

/s/
_____
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

KEVIN M. LALLY
Assistant United States Attorney
Chief, Organized Crime Drug Enforcement
  Task Force Section

SHAWN J. NELSON
Assistant United States Attorney
Deputy Chief, Organized Crime Drug Enforcement
  Task Force Section

VICTORIA A. DEGTYAREVA
Assistant United States Attorney
Organized Crime Drug Enforcement Task Force
  Section