NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
VICTORIA A. DEGTYAREVA (Cal. Bar No. 284199)
Assistant United States Attorney
OCDETF Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-7635
Facsimile: (213) 894-0142
E-mail: Victoria.Degtyareva@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SLAVCO IGNJATOV, et al.,

Defendants.

No. ED CR 17-222(A)-JGB

GOVERNMENT'S REPORT ON THE STATUS OF THE CASE AND MOTION TO AMEND THE COURT'S AUGUST 24, 2018 ORDER; DECLARATION OF HSI ASSISTANT DIRECTOR MATTHEW C. ALLEN

Hearing Date: November 5, 2018
Hearing Time: 2:00 p.m.
Location: Courtroom of the Hon. Jesus G. Bernal

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Victoria A. Degtyareva, hereby files its Report on the Status of the Case and Motion to Amend the Court's August 24, 2018 Order (the "Order"). Specifically, the government will not appeal the Order and will move to dismiss the charges against defendants Slavco Ignjatov and Valentino Hristovski. Before the case is dismissed, however, the government respectfully requests that the Court amend the portion of

its Order stating that the agents' actions created a scenario of significant government misconduct.

This Status Report and Motion to Amend is based upon the attached memorandum of points and authorities and the declaration of Homeland Security Investigations Assistant Director Matthew C. Allen, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 28, 2018

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

*/s/*
VICTORIA A. DEGTYAREVA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The government will not appeal the Court's August 24, 2018 Order granting the motion to suppress filed by defendants Slavco Ignjatov and Valentino Hristovski (Dkt. No. 121), and will move to dismiss the charges as to these two defendants based on the suppression of the principle evidence against them.[1]

Before the case is dismissed, however, the government requests the Court to amend its finding at page 12 of the Order regarding government misconduct. The government respectfully submits that, under all of the circumstances in this case, including the information set forth in the attached declaration of Homeland Security Investigations ("HSI") Assistant Director Matthew C. Allen regarding HSI policy, the agents' actions do not warrant a finding of misconduct. The law pertaining to the use of a GPS tracker at the border is a question of first impression in this Circuit and was unsettled at the time the agents placed the tracker in this case; the FBI agent and the LAPD officer consulted with HSI about the law governing installation of a GPS tracker at the international border; the HSI agents accurately conveyed HSI policy to them; and that HSI policy was consistent with the Department of Justice's ("DOJ") litigating position. In this context, the government submits that

---

[1] Djordje Karac ("Karac") and FNU LNU, also known as "Boss" ("Boss"), are also charged in the First Superseding Indictment. The government will not move to dismiss the charges as to Karac and Boss because, even without the suppressed evidence, it can prove the case against them. Agents seized approximately 194 kilograms of cocaine from Karac in March 2017 (where no GPS tracker was used) and text messages, recorded statements by co-conspirators, and testimony from cooperating witnesses confirms Boss's involvement in the March 2017 shipment of cocaine.

the FBI agent and the LAPD officer did not engage in misconduct, and in light of the impact of a misconduct finding on their careers, the government respectfully requests that the Court revise its Order regarding the misconduct findings.[2]

**II. ARGUMENT**

When the GPS tracker was installed in this case, the law regarding application of GPS trackers at the border was not settled. As the Court stated in the Order, "[t]he application of a GPS tracking device at a border appears to be a matter of first impression in this Circuit." (Order at 4.) The government is also not aware of case law in any other Circuit expressly addressing this issue, and the Supreme Court decision in Carpenter v. United States, 138 S.Ct. 2206 (2018), was issued after the events at issue in this case. When the agents decided to install the tracker in this case, the law regarding application of a GPS tracker to a commercial vehicle at the international border and subsequent tracking of that vehicle for fewer than 48 hours after entering the United States was not clearly established. Cf. Brown v. Illinois, 422 U.S. 590, 592 (1975) (officers searched the defendant's apartment and arrested the defendant, all without probable cause and without a warrant, in violation of clearly established law). In assessing whether a GPS tracker could be installed on the truck at the border, FBI Special Agent Hannah Monroe and LAPD Officer Asatur Mkrtchyan consulted with

[2] Based on the evidence before the Court and the government's decision to dismiss this case, the government does not believe that an evidentiary hearing is required for the Court to grant the limited relief which the government seeks in this motion. If the Court wishes to hear further testimony from any of the relevant witnesses, however, they can be made available to be questioned by the Court.

the Department of Homeland Security ("DHS"), which includes both HSI and Customs and Border Patrol ("CBP").

Special Agent Monroe and Officer Mkrtchyan testified that they relied on the guidance of HSI and CBP agents. Special Agent Monroe testified, "I'm trained as an F.B.I. agent that the border search experts are H.S.I. and C.B.P., and when I have questions about border search and authority that I should defer to them and their expertise, which I did." (6/25/18 Tr. at 45:2-6.) Likewise, Officer Mkrtchyan testified that he is not trained on things like border searches, border authority, or applying GPS trackers at the border because as a police officer in Los Angeles, "we don't really work with too many borders. We rely on our federal partners, such as the Department of Homeland Security, CBP, to assist us on investigations that lead us to the border or at the border." (7/9/2018 Tr. at 102:8-18.) Although, as the Court noted, "Officer Mkrtchyan testified that in general he understood that a warrant is necessary to install a GPS device," (Order at 12), in this case, because the GPS device was to be installed not in Los Angeles but at the international border, Officer Mkrtchyan relied upon the information provided by federal border agents.

Special Agent Monroe consulted with two separate DHS agents, both of whom informed her that under HSI policy a GPS tracker could lawfully be installed on defendant's commercial truck at the border and subsequently monitored without a warrant. In their declarations, Special Agent Monroe and Officer Mkrtchyan both stated that before defendants entered the United States, they and other agents participated in a conference call with a CBP officer, who told them that: "[B]order agents were authorized to install GPS trackers on any

vehicle at the border without a warrant so long as the GPS monitoring did not exceed 48 hours, and that the 48-hour rule did not apply to commercial vehicles, such as semi-trucks, which are subject to increased government regulation." (Declaration of Hannah Monroe ("Monroe Decl.") ¶ 14; Declaration of Asatur Mkrtchyan ¶ 6.)

Special Agent Monroe did not rely solely on the guidance of this CBP officer. She spoke with an HSI agent, who was assigned to a border district and who confirmed that the CBP officer's guidance was correct. (Monroe Decl. ¶ 14.) It was only after receiving this confirmation that Special Agent Monroe asked the HSI agent to install trackers on defendants' commercial truck at the Canada-United States border. (Id.) Although the Court has concluded that the guidance these agents received was incorrect, the government submits that in seeking guidance from DHS, Special Agent Monroe and Officer Mkrtchyan did not act in bad faith, deliberately, recklessly, or negligently.

In addition, Special Agent Monroe testified that the advice she received from the DHS agents was "per H.S.I. policy." (6/25/2018 Tr. at 42:22 to 43:24). As set forth in the attached declaration, the guidance on which Special Agent Monroe and Officer Mkrtchyan relied was, in fact, HSI's policy. (Declaration of HSI Assistant Director Matthew C. Allen ¶¶ 4-5.) Further, that policy is consistent with the litigating position of the Department of Justice ("DOJ"). Specifically, the DOJ does not believe that the Fourth Amendment requires a warrant to track a commercial vehicle on the open roads for fewer than 48 hours after entering the United States. The government recognizes and will not appeal this Court's ruling rejecting that position; however, in an area where the law was unsettled and the agents sought and followed the HSI guidance, the

government respectfully submits that their actions do not warrant a finding of misconduct, and that a misconduct finding is not necessary to the disposition of the issue. As the Court noted in its Order, when considering whether the attenuation doctrine applies to a particular case, one factor is "the purpose and flagrancy of the official misconduct." (Order at 10, citing Utah v. Strieff, 136 S. Ct. 2056, 2062 (2016).) This factor is not, by itself, dispositive, and the Court need not find that Special Agent Monroe and Officer Mkrtchyan engaged in purposeful or flagrant misconduct in order to find the attenuation doctrine does not apply. The evidence shows that their purpose was not to flout the Fourth Amendment or to circumvent the warrant requirement; rather, they were following HSI guidance. Although the Court found that HSI's guidance and DOJ's litigating position were flawed, the government respectfully submits that Officer Mkrtchyan and Special Agent Monroe should not be found to have engaged in misconduct for relying on such guidance in an unsettled area of law.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion and amend its August 24, 2018 Order to delete the paragraph on page 12 starting with "Lastly, the Court considers the official misconduct weighs against the government." Alternatively, if the Court is not inclined to strike the paragraph, the government requests that the Court amend the paragraph to state that its finding of "significant government misconduct" was aimed at the government position as a whole, and it was not a finding that Officer Mkrtchyan or Special Agent Monroe acted in bad faith, deliberately, recklessly, or negligently.